IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JENNIFER ROUSE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, )<br>ACTING COMMISSIONER OF )<br>SOCIAL SECURITY, )<br>)<br>Defendant. ) | Civil No.  13-1446-JAR |

## MEMORANDUM AND ORDER

This matter is before the Court for review of the final decision of Defendant Commissioner of Social Security denying Plaintiff Jennifer Rouse's application for a period of disability and disability benefits under Title II of the Social Security Act.[1]  Because the Court finds that Defendant Commissioner's findings are not supported by substantial evidence, the Court reverses the decision of Defendant Commissioner.

**I.      Procedural History**

On July 5, 2010, Plaintiff protectively applied for a period of disability and disability insurance benefits.  Her application claimed an onset date of June 26, 2008; and she was last insured for disability insurance benefits on June 30, 2013.  Plaintiff's application was denied initially and upon reconsideration.  Plaintiff timely requested a hearing before an administrative law judge ("ALJ").  After a hearing, the ALJ issued a decision finding that Plaintiff was not disabled; the Appeals Council denied Plaintiff's request for review of the ALJ's decision.  Plaintiff then timely sought judicial review before this Court.

---
[1] 42 U.S.C. §§ 401–434.

## II.     Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether Defendant's decision is supported by substantial evidence in the record as a whole and whether Defendant applied the correct legal standards.[2] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] In the course of its review, the court may not re-weigh the evidence or substitute its judgment for that of Defendant.[4]

## III.    Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[5] An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[6] The Secretary has established a five-step sequential evaluation process to determine whether a claimant is disabled.[7] If the ALJ determines the claimant is disabled or not disabled at any step along the

---

[2]*See White v. Massanari*, 271 F.3d 1256, 1257 (10th Cir. 2001) (citing *Castellano v. Sec'y of Health & Human Servs*., 26 F.3d 1027, 1029 (10th Cir. 1994)).

[3]*Id*. (quoting *Castellano*, 26 F.3d at 1028).

[4]*Id.*

[5]42 U.S.C. § 423(d)(1)(A); § 416(i); § 1382c(a)(3)(A).

[6]*Id.* § 423(d)(2)(A); § 1382c(a)(3)(B).

[7]*Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1983).

way, the evaluation ends.[8]

Plaintiff does not challenge the ALJ's determination at step one that Plaintiff has not engaged in substantial gainful activity[9] since June 26, 2008, the alleged onset date. Nor does Plaintiff challenge the ALJ's determination at step two that Plaintiff has medically "severe" impairments: obesity, and degenerative joint disease of the right knee, right shoulder, and left ankle status post-left ankle surgery. Plaintiff does not challenge the ALJ's determination at step three that none of her impairments or combination of impairments meet or equal a listing.

But Plaintiff challenges the ALJ's determination of Residual Functional Capacity ("RFC") at step four on the basis that the ALJ erroneously omitted limitations as a consequence of the ALJ failing to consider probative medical opinions.

## IV.   Discussion

Plaintiff specifically challenges the ALJ's RFC determination because: (1) the ALJ gave "substantial weight" to the opinion of Dr. Stein, yet inexplicably included a limitation that Plaintiff "cannot make more than periodical overhead use of right arm," when Dr. Stein opined that Plaintiff could make no use of right arm, a total preclusion of reaching; and (2) the ALJ improperly rejected the opinion of treating physician Dr. Will.

The ALJ found that Plaintiff had the RFC to perform light work, "except the claimant can only occasionally climb ramps or stairs; never climb ladders, ropes or scaffolding; cannot work around hazards; cannot make more than periodical overhead use of her right arm; and requires a sit/stand option."

---

[8]*Id.*

[9]*See Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988).

Plaintiff contends that the ALJ improperly rejected the opinion of Dr. Will, her treating physician. Dr. Will rendered an opinion in a December 12, 2011 note, that Plaintiff "is still having significant issues with her ankle that she has had multiple surgeries on; therefore cannot work on her feet at all. She also has issues with her left shoulder[10] that she injured and has had surgeries on. She is unable to work over her head with this." Dr. Will also submitted a Medical Source Statement dated May 4, 2012, a checklist form on which Dr. Will indicated, in pertinent part, that Plaintiff: could lift or carry five pounds frequently and ten pounds occasionally; stand or walk less than fifteen minutes continuously; stand or walk less than one hour in an eight hour workday; sit continuously less than thirty minutes at a time and less than two hours total in an eight hour workday; push or pull limited to two to three times an hour; and reach, handle, finger or feel occasionally. Dr. Will further opined that Plaintiff would need to lie down or recline six to eight times during an eight hour workday to alleviate pain, and must avoid any exposure to dust or fumes. must avoid moderate exposure to extreme heat and cold or weather and wetness/humidity, and avoid concentrated exposure to vibration, hazards and heights.

With respect to issues concerning the nature and severity of the claimant's impairments, a treating source's opinion must be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and is not inconsistent with other substantial evidence in the record, but if it is "deficient in either respect, it is not entitled to controlling weight."[11] In assessing a medical opinion, including the opinion of a treating source,

---

[10] Dr. Will later corrected his December 12, 2011 note to indicate that it was Plaintiff's right upper extremity, not her left upper extremity that was impaired.

[11] *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting 20 C.F.R. § 404.1527(d)(2) and citing SSR 96- 2p, 1996 WL 374188, at *5 (July 2, 1996)).

the ALJ is to apply the so-called *Goatcher* factors, to wit: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.[12] The ALJ, however, is not required to discuss each of these factors.[13]

If the ALJ does not give controlling weight to the opinion of the treating physician concerning the nature and severity of the claimant's limitations, the ALJ must give reasons for the weight accorded the treating source's opinion.[14] And, if the ALJ entirely rejects the opinion of the treating source, the ALJ must give "specific, legitimate reasons" for doing so.[15]

The ALJ stated that he gave "little weight" to Dr. Will's opinion because there is no support in the evidentiary record or in other medical opinions for Dr. Will's opinion that Plaintiff cannot work on her feet at all and cannot work overhead with her right upper extremity. The ALJ also noted that there is no evidentiary support for Dr. Will's opinions that Plaintiff cannot perform more than a less-than-sedentary level of exertion, cannot sit for more than thirty minutes

---

[12]*Goatcher v. U.S. Dept. of Health & Human Servs.*, 52 F.3d 288, 290 (10th Cir.1995) (citing 20 C.F.R. § 404.1527(d)(2)-(6)).

[13]*See Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir.2007)(finding that the ALJ's lack of discussion of all the factors did not prevent the court from giving meaningful review to the ALJ's decision.)

[14]*Watkins*, 350 F.3d at 1301.

[15]*Id.* (citing *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir.1996))(quoting *Frey v. Bowen*, 816 F.2d 508, 513(10th Cir.1987).

continuously or for over two hours a day, and cannot perform postural activities aside from occasional reaching, handling, fingering and feeling, and required substantial environmental restrictions.  The ALJ further noted that Dr. Will's opinion was in the form of checkmarks on the Medical Source Statement form, with little explanation.  The ALJ also explained that Plaintiff's daily living activities indicate that she has far greater capabilities than those opined by Dr. Will.  Finally, the ALJ explained that contrary to Dr. Will's opinion that Plaintiff cannot sit for more than thirty minutes continuously, during the administrative hearing, Plaintiff sat for over thirty minutes.  Thus, the ALJ explained that he discounted Dr. Will's opinion because it received little support from the evidence, other medical opinions or Plaintiff's own conduct.

Here, a review of Dr. Will's treating records reveals that although Dr. Will rendered opinions on December 12, 2011, and in the Medical Source Statement on May 4, 2012, his treatment notes do not reflect that these opinions were based on objective assessments or examinations of Plaintiff on those dates, or at any time.  Rather on each of those dates, his records reflect that Dr. Will relied upon history, but not examination, in rendering the opinions.  There is simply no support in Dr. Will's own treatment records on those dates, or at any time, for his opinions that Plaintiff could not work at more than a sedentary level of exertion, could not work on her feet at all or could not work overhead with her upper right extremity.

But, the treatment records and medical opinions of other providers are at least partially supportive of Dr. Will's opinion on the degree of limitation and impairment of Plaintiff's right arm and shoulder.  After undergoing a prolonged course of physical therapy, trigger point injections and other non-surgical interventions, and seeing virtually no improvement, in June 2009, Plaintiff had arthroscopic surgery on her right shoulder.  Yet, Plaintiff saw little

improvement in the range of motion of her right shoulder.  Three months post-operative, the surgeon, Dr. Gabriel, noted that Plaintiff had limited range of motion in her right shoulder and continued neck and shoulder pain.  And, although Plaintiff was released to regular duty in September 2009, later medical records reveal that Plaintiff continued to have limited range of motion and significant pain in her right upper extremity, as well as continued pain and problems with her left ankle.

Six months post-operative, in December 2009, Dr. Paul Stein, a physician who examined Plaintiff and reviewed records, noted his diagnosis of cervical and right shoulder strain and sprain.  Dr. Stein further assessed the degree of Plaintiff's permanent partial impairment, using the AMA Guide to the Evaluation of Permanent Impairment, 4th edition, and concluded that Plaintiff had a 5% whole person impairment of the cervical spine, a 5% whole person impairment of the right shoulder, and a total whole person impairment of 10%.  With respect to Plaintiff's cervical strain, Dr. Stein opined that  Plaintiff must "avoid repetitive overhead activity."  Notably, Dr. Stein did not opine that this limitation was only for the right arm.  And with respect to Plaintiff's strain and sprain of her right shoulder, Dr. Stein opined that Plaintiff must

> 1. Avoid activity but the right hand above shoulder level.  2. Avoid activity with the right hand extended behind the axis of the body.  3. Avoid activity with the right arm fully outstretched in any direction.  4. Avoid lifting more than 20 pounds with the right hand up to chest level.

The ALJ stated that he gave "partial weight" to Dr. Stein's opinion.  The ALJ discounted that part of Dr. Stein's opinion that related to limitations in the cervical spine, because the ALJ found that later evidence indicated that Plaintiff did not continue to suffer from substantial neck

problems. But the ALJ stated that he gave "significant weight to that part of Dr. Stein's opinion that restricted Plaintiff from performing repetitive overhead work, repetitive twisting of the neck and making more than limited use of her right shoulder and arm. The ALJ explained that this part of Dr. Stein's opinion was supported by other substantial evidence, including the opinion of state agency physician Dr. Warren. The ALJ further found that the evidence supported the opinion of Dr. Warren, so the ALJ gave "great weight" to Dr. Warren's opinion that Plaintiff could work at a light level of exertion with limitations to her ability to climb, reach and work around hazards.

While Dr. Will's treatment records are not supportive of his opinion, other records, and the medical opinions of Dr. Stein and Dr. Warren are supportive of Dr. Will's opinion that Plaintiff cannot work overhead with her right upper extremity. The ALJ expressly gave significant weight to Dr. Stein's opinion that Plaintiff should avoid above shoulder level activity with her right hand and should avoid any activity involving extending the right hand behind her body or extending the right arm fully in any direction. And the ALJ expressly gave great weight to Dr. Warren's opinion that Plaintiff had (unspecified) limitations in her ability to reach. Thus, the ALJ improperly totally discredited the opinion of treating physician Dr. Will, since Dr. Will's opinion found some support in the opinions of Drs. Stein and Warren, whom the ALJ relied upon.

Moreover, there is other evidence supportive of a total limitation from reaching overhead with the right arm. In October 2010, Dr. James Henderson, a consultative examiner, found that Plaintiff had a limited range of motion in right shoulder abduction and forward elevation, despite being post-arthroscopic repair. And Dr. Henderson also found that Plaintiff had "difficulty in

orthopedic maneuvers." The ALJ did not address Dr. Henderson's opinion at all, but erroneously dismissed Dr. Henderson as having only "diagnosed the claimant's traumatic arthralgias, but failed to provide a residual functional capacity assessment." If the ALJ rejects the opinion of the treating source, he is required to consider *all* other medical opinions in the record to see if they outweigh the reports of the treating physician.[16]

Thus, the ALJ erred in at least two respects. He gave the opinion of Dr. Will, the treating physician "little weight," on the erroneous basis that there was no supportive evidence or medical opinions. Furthermore, having rejected the opinion of Dr. Will, the ALJ was required to consider all other medical opinions, but ignored the opinion of Dr. Henderson. And, although he expressly gave significant weight to that part of Dr. Stein's opinion relating to Plaintiff's right shoulder and arm, the ALJ inexplicably assessed Plaintiff to have an RFC that allowed for "periodical overhead use of right arm," when Dr. Stein opined that Plaintiff was totally precluded from extending her right arm in any direction, including above her should level.

## V. Conclusion

For these reasons, the Court concludes that the ALJ erred in assessing Plaintiff's RFC at step four. Accordingly the decision of the Commissioner will be reversed and remanded. Upon remand, the Commissioner shall reassess the RFC in accordance with this decision.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Defendant's decision denying Plaintiff disability benefits is **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**

---

[16] SSR 96-5P, 1996 WL 374183 (July 2, 1996).

Dated: January 9, 2015

          S/ Julie A. Robinson

JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE